XAVIER BECERRA
Attorney General of California
PAUL STEIN
Supervising Deputy Attorney General
SHARON L. O'GRADY
Deputy Attorney General
State Bar No. 102356
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3834
  Fax:  (415) 703-1234
  E-mail:  Sharon.OGrady@doj.ca.gov
*Attorneys for Defendant Gavin Newsom, in his official capacity as Governor of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SAN FRANCISCO INTERNATIONAL ARTS FESTIVAL; NKECHI EMERUWA,**<br><br>Plaintiffs,<br><br>v.<br><br>**MAYOR LONDON BREED, in her official capacity; GOVERNOR GAVIN NEWSOM, in his official capacity,**<br><br>Defendants. | 3:20-cv-07314<br><br>**OPPOSITION OF GOVERNOR NEWSOM TO APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Dept:    11<br>Judge:    The Honorable James Donato<br>Trial Date:  Not set<br>Action Filed:  October 18. 2020 |

# TABLE OF CONTENTS

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND | 2 |
|    I.   The COVID-19 Pandemic | 2 |
|    II.   California's Response to the Pandemic | 3 |
|    III.   Public Gatherings | 4 |
|    IV.   This Action and Motion for TRO | 5 |
| LEGAL STANDARD | 6 |
| ARGUMENT | 6 |
|    I.   The Declaration Requested by Plaintiffs Should Be Denied. | 6 |
|    II.   Plaintiffs Have Not Shown That the City Should Be Ordered to Issue A Permit | 7 |
| CONCLUSION | 9 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ........................................................................................... 6

*Cty of Butler v. Wolf*
    -- F. Supp. 3d -- (W.D. Pa. Sept. 14, 2020) ...................................................................... 7

*Garcia v. Google*
    786 F.3d 733 (9th Cir. 2015) .............................................................................................. 6

*Gish v. Newsom*
    No. EDCV20-755-JGB, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) ............................ 2

*Givens v. Newsom*
    -- F. Supp. 3d -- (E.D. Cal. May 8, 2020), (May 19, 2020) .............................................. 7

*Harvest Rock Church, Inc. v. Newsom*
    No. LACV 20-6414 JGB (KKx), 2020 WL 5265564 (C.D. Cal. Sept. 2, 2020) .............. 2

*South Bay United Pentecostal Church v. Newsom*
    140 S. Ct. 1613 (2020) ............................................................................................... 2, 8, 9

*South Bay United Pentecostal Church v. Newsom*
    959 F.3d 938 (9th Cir. 2020) .............................................................................................. 8

*Winter v. Natural Resources Defense Council, Inc.*
    555 U.S. 7 (2008) ................................................................................................................ 6

**OTHER AUTHORITIES**

Executive Order N-33-20 ........................................................................................................... 3

Executive Order N-60-20 ........................................................................................................... 3

**INTRODUCTION**

Plaintiffs seek to conduct an arts festival this weekend in San Francisco. They object that such festivals should not be subject to general restrictions applicable to gatherings when more lenient and closely tailored restrictions are imposed on other activities protected by the First Amendment such as worship services and protests. The State agrees and, indeed, has been formulating guidance for musical, theatrical and other artistic performances, as part of the development of industry-specific guidance documents the State has been publishing throughout this pandemic to guide public health and safety during this time. As these guidelines are not complete, this morning the State is issuing an interim directive which permits performances before audiences of less than 100 individuals in counties such as San Francisco but requires approval of the safety precautions taken for such performances by the local public health officer.

Because this new directive supersedes the State's general restriction on gatherings, Plaintiffs' challenge to the application of that restriction to them is moot. Even more fundamentally, Plaintiffs' request for a declaration concerning the constitutionality of the State's gathering restrictions at this stage is inappropriate. In analyzing a request for a temporary restraining order, courts only examine the likelihood of success on the merits. Plaintiffs cite no authority, and the Governor is aware of none, that would allow a court to broadly declare a statute or executive order invalid as a *provisional remedy*, much less on a motion for temporary restraining order where the State has had less than 48 hours to respond to the motion.

The only issue properly before this Court is whether it should issue a temporary restraining order allowing Plaintiffs' event to proceed the weekend of October 24-25. The Governor understands that the City of San Francisco has determined that the planned festival does not adequately protected against the spread of COVID-19. The Court should respect this determination. Plaintiffs concede that "the City has a compelling interest in ensuring the public's health during a pandemic." Further, as numerous decisions have recognized, federal courts should defer to the judgment of politically accountable state and local public health officials about the COVID-19-related risks of various activities in the face of medical and scientific uncertainty. Especially as Plaintiffs have failed to present any persuasive evidence that the

1

proposed festival can be conducted safely, the Court should defer to the City's judgment and deny the requested temporary restraining order.

## BACKGROUND

### I. THE COVID-19 PANDEMIC

As this Court undoubtedly is aware, the COVID-19 pandemic poses an ongoing and deadly threat to public health. To date, SARS-CoV-2, the novel coronavirus that causes COVID-19, has infected more than 8.1 million and killed over 219,000 people in the United States alone.[1] Californians have suffered nearly 870,000 infections and nearly 17,000 deaths.[2] COVID-19 poses an acute risk of transmission in settings where there is prolonged contact with an infected person or where large numbers of people come together. The virus also may have serious long-term effects, including on those individuals who do not initially experience significant symptoms.

The SARS-CoV-2 virus spreads primarily through respiratory droplets that remain in the air and may be transferred unwittingly by individuals who exhibit no symptoms. *See South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring); *Harvest Rock Church, Inc. v. Newsom*, No. LACV 20-6414 JGB (KKx), 2020 WL 5265564, at *2 (C.D. Cal. Sept. 2, 2020), *appeal filed*, No. (9th Cir. Aug. 31, 2020). As yet, there is no vaccine or cure. *Harvest Rock*, 2020 WL 5265564, at *2. As a consequence, measures such as physical distancing that limit physical contact are the only widely recognized way to slow the spread. *See id.; Gish v. Newsom*, No. EDCV20-755-JGB (KKx), 2020 WL 1979970, at *4 (C.D. Cal. Apr. 23, 2020), *appeal filed*, No. 20-55445 (9th Cir. Apr. 28, 2020).

### II. CALIFORNIA'S RESPONSE TO THE PANDEMIC

California took early and decisive action to fight the COVID-19 pandemic. On March 4, 2020, the Governor proclaimed a State of Emergency in California. Two weeks later, on March

---

[1] Centers for Disease Control & Prevention, CDC COVID Data Tracker, "United States COVID-19 Cases and Deaths by State," https://covid.cdc.gov/covid-data-tracker/?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcases-updates%2Fcases-in-us.html#cases (last visited Oct. 21, 2020).

[2] Cal. Dept. Pub. Health, COVID-19 by the Numbers, October 21, 2020, https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx#COVID-19%20by%20the%20Numbers

19, the Governor issued Executive Order N-33-20, the "Stay-at-Home Order," requiring Californians to heed state and local public health directives and "to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors."[3]

On April 28, 2020, in light of progress made as a result of the Stay-at-Home Order, the Governor announced a "Resilience Roadmap" (Roadmap) to guide the gradual and safe reopening of the State.[4] The Roadmap, since superseded, had four stages: (1) safety and preparedness; (2) reopening of lower-risk workplaces and other spaces; (3) reopening of higher-risk workplaces and other spaces; and (4) an end of the Stay-at-Home Order.[5] On May 7, 2020, based on a review of then-current data about the spread of COVID-19, the State Public Health Officer issued an order moving the state into Stage 2 and advised that the State would move to the next stages at "a pace designed to protect public health and safety."[6]

Over the summer, COVID-19 infections and deaths resurged. As a consequence, on July 13, 2020, the State re-imposed many previously relaxed restrictions.[7] These new restrictions succeeded in slowing the spread of the virus, and on August 28, 2020, the State announced a new plan for relaxing restrictions, the "Blueprint for a Safer Economy," a "targeted system for sector reopenings which considers both current epidemiological conditions and the latest understanding of transmission risk in certain sectors[.]"[8] Under this Blueprint, lower-risk activities are

---

[3] https://www.gov.ca.gov/wp-content/uploads/2020/03/EO-N-33-20-COVID-19-HEALTH-ORDER-03.19.2020-002.pdf (last visited Oct. 21, 2020). *See also* Executive Order N-60-20 (directing Californians "to obey State public health directives" on CDPH's website.

[4] https://www.gov.ca.gov/2020/04/28/governor-newsom-provides-update-on-californias-pandemic-resilience-roadmap/ (last visited Oct. 21, 2020).

[5] *Id.*

[6] Cal. Dept. Pub. Health, Order of the State Public Health Officer at 2, May 7, 2020, https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/SHO%20Order%205-7-2020.pdf (last visited Oct. 21, 2020).

[7] Statewide Public Health Officer Order, https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/SHO%20Order%20Dimming%20Entire%20State%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.pdf (last visited Oct. 21, 2020).

[8] Cal. Dept. Pub. Health, Order of the State Public Health Officer at 1-2, Aug. 28, 2020, https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/8-

3

permitted sooner than higher-risk activities, based on several criteria such as "number of people per square feet," "duration of exposure," "physical interactions," "mixing of people from differing households and communities," "indoor vs. outdoor," and "activities that are known to cause increased spread," such as singing.  Each county is placed in one of four, graduated tiers depending on various metrics, including the COVID test-positivity rate in the county; a county can move into a less restrictive tier, and reopen additional activities, when they meet specified benchmarks.

### III.  PUBLIC GATHERINGS

Because public gatherings pose a great risk of spreading COVID-19, CDPH began discouraging them before the Stay-at-Home Order.[9]  These restrictions were relaxed for worship services and other cultural activities when the State issued specific guidance for such activities in late May.[10]  The State also allowed gatherings for political protests subject to distancing and other restrictions.[11]  On October 9, 2020, the State Public Health Officer issued "Guidance for Private Gatherings," more generally relaxing restrictions on gatherings and, in particular, permitting private outdoor gatherings comprised of up to three households and a total of twelve (12) people ("October 9 Guidance"). [12]

The State Public Health Officer also has been developing guidance for live musical, theatrical, and other artistic performance.  Because this guidance is not yet finished, on October 21, the State Public Health Officer posted interim guidance clarifying that local health officers

---

28-20_Order-Plan-Reducing-COVID19-Adjusting-Permitted-Sectors-Signed.pdf.

[9] Cal. Dept. Pub. Health, Guidance for the Prevention of COVID-19 Transmission for Gatherings, March 16, 2020, https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/cdph-guidance-gatherings-covid19-transmission-prevention-03-16-2020.pdf

[10] Cal. Dept. Pub. Health, COVID-19 Industry Guidance:  Places of Worship and Providers of Religious Services and Cultural Ceremonies, May 25, 2020 https://files.covid19.ca.gov/pdf/guidance-places-of-worship--en.pdf (last visited Oct. 21, 2020).

[11] Stay Home Q&A, available at https://covid19.ca.gov/stay-home-except-for-essential-needs/ (as of Oct. 20, 2020).

[12] https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/CDPH-Guidance-for-the-Prevention-of-COVID-19-Transmission-for-Gatherings-10-09.aspx (last visited Oct. 21, 2020).

may permit some gatherings for live musical, theatrical and other artistic performance such as the arts festival at issue in this case beyond those permitted in the general gatherings guidance. In particular, the "Q&A" section of the Department of Public Health's website, which sets forth legally binding guidance, now provides:

> **Are gatherings for musical, theatrical, and artistic performances permitted?**
>
> Gatherings for live musical, theatrical, and other artistic performances are permitted outdoors subject to guidance that is being prepared by CDPH. Because such gatherings frequently involve the mixing of people from different communities creating a high risk of transmission of COVID-19, until that guidance is issued, such gatherings are allowed only in counties in the "moderate" or "minimal" risk levels of the Blueprint for a Safer Economy. In addition, performances are permitted only if, in the exercise of their discretion, the relevant local or city health officer approves the precautions taken to ensure the safety of audience members, performers and others connected with the performance. Performances may have no more than 50 persons in the audience in counties in the "moderate" risk level and no more than 100 in counties in the "minimal" risk level. If a local or city health officer approves a performance, the officer shall notify CDPH of the approval within two business days.
>
> During approved performances, all audience members and others not performing must wear masks, and audience members from different households must be spaced at least six feet apart when seated or otherwise viewing the performance. Performers who are not wearing face coverings must be at least six feet apart from each other.
>
> Approval is not required for a live musical, theatrical or artistic performance if, in aggregate, members of no more than three households attend, perform, or otherwise are involved in the performance.

Stay Home Q&A, available at https://covid19.ca.gov/stay-home-except-for-essential-needs/ (as of Oct. 20, 2020) ("October 21 Performance Q&A").)

### IV. THIS ACTION AND MOTION FOR TRO

Plaintiffs San Francisco International Arts Festival ("SFIAF") and Nkechi Emeruwa ("Emeruwa") filed this action on October 18, 2020. The Complaint alleges that on September 17, 2020, the City approved a permit allowing an "outdoor arts performance event for 49 people" hosted by SFIAF, and at which Emeruwa was to perform, to take place the weekend of October 24-25 in Fort Mason. Compl. ¶9. The Complaint further alleges that the City subsequently revoked the permit based on the now-superseded October 9 Guidance. *Id.* ¶10.

In this motion for TRO, Plaintiffs seeks an order requiring the City to issue a permit for the event. It also seeks an order "declar[ing] unconstitutional any law or order issued by the City and

1  County of San Francisco or by the State of California that restrains art performances in a manner
2  differently than political protests or religious gatherings."  The thrust of Plaintiffs' complaint
3  against the State is that the October 9 Guidance violates the First Amendment because it treats art
4  performances more restrictively than gatherings for religious worship and political protests.

## LEGAL STANDARD

Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  Parties seeking such extraordinary relief must demonstrate (1) a strong likelihood of success on the merits, (2) irreparable injury if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest.  *Id.* at 20; *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132–35 (9th Cir. 2011).  Because they seek a mandatory injunction to disrupt already-implemented COVID-19-related directives, Plaintiffs must meet the "doubly demanding" burden of "establish[ing] that the law and facts clearly favor [their] position." *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

## ARGUMENT

### I. THE DECLARATION REQUESTED BY PLAINTIFFS SHOULD BE DENIED.

In their proposed order, Plaintiffs seek a declaration that any State directive restricting outdoor performances "in a manner different than political protest or religious gatherings" is unconstitutional.  To the extent that this request is based on application of the general restrictions on gatherings to artistic performances, it is moot.  As explained above, the October 9 Guidance no longer applies to the proposed festival because it has been superseded by the interim directive in the October 21 Q&A, which does not prohibit gatherings for "artistic performances" with less than 50 people in counties such as San Francisco that are at the "minimal" risk level.  Moreover, while the new directive requires the local health officer to approve the safety precautions taken for any performances not authorized by general gatherings guidance, plaintiffs cannot claim any injury from that approval requirement because the city's public health officer disapproved of the festival, and local public health officers retain the power to disapprove both political protests and

1 worship services.[13] Thus, Plaintiffs cannot show that either the October 9 Guidance or the
2 October 21 Q&A threatens to cause them any immediate, irreparable injury and, indeed, lack
3 standing to challenge the State's directives.

4     In any event, Plaintiffs are not entitled to a TRO granting a "declaration" invalidating any
5 law or order that treats art performances differently from protests and worship. "Temporary
6 restraining orders are emergency measures intended to preserve the status quo . . . and the
7 irreparable harm must therefore be clearly immediate." *Givens v. Newsom*,-- F. Supp. 3d --, 2020
8 WL 2307224 (E.D. Cal. May 8, 2020), *appeal docketed* (May 19, 2020) (citing Fed. R. Civ. Proc.
9 65(b)(1); *Reno Air Racing Ass'n v. McCord*, 9th Cir. 1126, 1131 2006). The only irreparable
10 injury asserted on this motion is plaintiffs' inability to proceed with their proposed festival the
11 weekend of October 24-25. Their motion utterly fails to explain how declaratory relief is
12 required in order for their festival to proceed, or how withholding such a declaration now would
13 cause them any injury whatever.

### II. PLAINTIFFS HAVE NOT SHOWN THAT THE CITY SHOULD BE ORDERED TO ISSUE A PERMIT

    Plaintiffs also request a temporary restraining order requiring the City to issue a permit for the proposed festival. This request should be denied. It is the Governor's understanding that San Francisco's decision to deny a permit for the festival was based not only on the October 9 Guidance, but also on the independent judgment of city public health officials that the festival poses a risk to public health and safety. Heavily relying on a district court decision from Pennsylvania that has been stayed by the Third Circuit Court of Appeals, *Cty of Butler v. Wolf*, -- F. Supp. 3d --, 2020 WL 5510690 (W.D. Pa. Sept. 14, 2020), *stayed pending appeal, Cty of Butler v. Governor of Pa.*, No. 20-2936, 2020 WL 5868393 (3d Cir. Oct. 1, 2020), Plaintiffs urge

---

[13] The State's Q&A on political protests states that "Local Health Officers are advised to consider appropriate limitations on outdoor attendance capacities, factoring their jurisdiction's key COVID-19 health indicators." Stay Home Q&A, available at https://covid19.ca.gov/stay-home-except-for-essential-needs/ (as of Oct. 20, 2020). The State's guidance on religious services contains the same language: "Local Health Officers are advised to consider appropriate limitations on outdoor attendance capacities, factoring their jurisdiction's key COVID-19 health indicators COVID-19 Industry Guidance: Places of Worship and Providers of Religious Services and Cultural Ceremonies (July 29, 2020), available at *https://covid19.ca.gov*.

this Court to second-guess the informed judgments of local public health officials as to the appropriate measures to be taken to address the COVID-19 pandemic.  The Court should reject Plaintiffs' invitation.  As the Ninth Circuit recently observed in denying injunctive relief in another challenge to the State's COVID-19 restrictions: "We are dealing here with a highly contagious and often fatal disease for which there presently is no known cure.  In the words of Justice Robert Jackson, if a '[c]ourt does not temper its doctrinaire logic with a little practical wisdom, it will convert the Bill of Rights into a suicide pact'." *South Bay United Pentecostal Church v. Newsom*, 959 F.3d 938, 939 (9th Cir. 2020), *emergency application for writ of injunction denied*, 140 S. Ct. 1613 (2020) (denying emergency motion for injunctive relief to allow in-person religious services pending appeal).  And, as Chief Justice Roberts explained in the same case, "[o]ur Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. at 1613-1614 (quoting *Jacobson v.* Massachusetts, 197 U.S. 11, 38 (1905)).  Accordingly, an "unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to the people" should not be "second-guessing" decisions made by public health officials to combat an emergency pandemic "in areas fraught with medical and scientific uncertainties." *Id.* at 1614 (quotation omitted).

Here, Plaintiffs are asking this Court to override the considered judgment of local public health officials without a sufficient basis.  The only evidence Plaintiffs proffer as to the safety of the proposed event is a three-page declaration from Dr. Joann Love.  While Dr. Love avers that she has a medical degree and nearly a decade's experience in emergency medicine, and that she has operated a "COVID-19 focused sanitation and decontamination service" since March, she does not claim to have any training in epidemiology or dealing with infectious diseases. *See* Exh. A to the Declaration of Dr. Joann Love.  Moreover, while she notes that the festival will be conducted outside, where the risk of transmission is reduced, Love Decl. ¶ 6, and lists the precautions that Plaintiffs plan to take, *id.* ¶ 7, she offers no explanation for her conclusion that the festival will be safer than other permitted outdoor gatherings, *id.* ¶ 8.  Indeed, noticeably

absent from Dr. Love's declaration is any analysis of the number and size of the events that Plaintiffs plan to hold.  This is insufficient to overcome the deference due the judgment of politically accountable public health officials that allowing the event to go forward as planned would pose a threat to public health and safety.  *See South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. at 1613-14.

## CONCLUSION

The Court should deny Plaintiff's request for a TRO.

Dated:  October 22, 2020                                        Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
PAUL STEIN
Supervising Deputy Attorney General

  */s/ Sharon L. O'Grady*

SHARON L. O'GRADY
Deputy Attorney General
*Attorneys for Defendant Gavin Newsom, in his official capacity as Governor of the State of California*

SA2020303988
42394241.docx

# CERTIFICATE OF SERVICE

Case Name: **San Francisco International Arts Festival, et al. v. Mayor London Breed, et al.**
Case No. **3:20-cv-07314-JD**

I hereby certify that on <u>October 21, 2020</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**OPPOSITION OF GOVERNOR NEWSOM TO APPLICATION FOR TEMPORARY RESTRAINING ORDER**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 21, 2020</u>, at San Francisco, California.

| Robert Hallsey | /s/ Robert Hallsey |
|---|---|
| Declarant | Signature |

SA2020303988
42395248.docx