UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO INTERNATIONAL ARTS FESTIVAL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LONDON BREED, et al.,<br><br>Defendants. | Case No. 20-cv-07314-JD<br><br>**ORDER RE MOTIONS TO DISMISS**<br>Re: Dkt. Nos. 94, 100 |

Plaintiffs San Francisco International Arts Festival (SFIAF) and one of its affiliated artists, Nkechi Emeruwa, sued San Francisco Mayor London Breed and California Governor Gavin Newsom over limitations on public gatherings implemented in response to the COVID-19 pandemic. The flash points, per the operative complaint, were the denial of permits for outdoor performance events at Crane Cove Park in May 2021 and the Jerry Garcia Amphitheater in September 2021. Plaintiffs say they were denied these permits while other organizations were allowed to hold events at other locations throughout San Francisco. Dkt. No. 93 (TAC).

Plaintiffs alleged three claims under 42 U.S.C. § 1983 against Breed on grounds of freedom of expression, equal protection, and due process. Newsom was expressly excluded as a defendant in these claims. The only claim against Newsom is for declaratory relief ostensibly based on similar grounds, although the TAC is rather vague on this point. *See* TAC ¶¶ 47-48. The same declaratory relief claim is directed against Breed. Defendants have moved for dismissal of all of plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. Nos.

1   94, 100.  The parties' familiarity with the record is assumed, and plaintiffs' third amended
2   complaint is dismissed with prejudice.

## DISCUSSION

### I. DECLARATORY RELIEF

Plaintiffs' sole allegation for this claim is that "[a]n actual controversy has arisen and now exists between Plaintiffs and Defendants, . . . , including each party's respective rights and interests to hold gatherings and obtain permits during the COVID-19 Pandemic.  Accordingly, a declaration of each party's respective rights is needed."  TAC ¶ 48.  Plaintiffs add in the prayer for relief that they seek an order "declaring unconstitutional the Mayor's and Governor's guidelines for outdoor gatherings to the extent that they treat certain arts with less protection and more restrictions than imposed on others who have similarly protected constitutional rights to f[r]ee speech and the right to assemble."  *Id*. at 12 (Prayer) ¶ 4.

Even giving plaintiffs every benefit of the doubt, these are hardly short and plain statements showing plaintiffs may be entitled to relief, as Rule 8 contemplates.  Plaintiffs omit any material facts, such as whether a current controversy actually exists in the form of permit applications that are presently pending, or what the "Mayor's and Governor's guidelines for outdoor gatherings" might be.  Plaintiffs are equally opaque with respect to the nature and content of the declaration they hope to obtain.

This is all too vague to fairly apprise defendants of the claim against them, or to warrant judicial intervention.  "Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment."  *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 533 (9th Cir. 2008).  That is the appropriate outcome here.  As in *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111 (1962), SFIAF and Emeruwa are seeking "declaratory judgments on issues of public moment" -- *i.e.*, COVID-19-related rules and regulations on public gatherings -- and they are doing so "in speculative situations" and on a "woefully lacking" record.  369 U.S. at 112-13. "So fragile a record is an unsatisfactory basis on which to entertain this action for declaratory relief."  *Id*. at 114.

2

## II. CLAIMS AGAINST MAYOR BREED

Because Breed has been "sued in her official capacity" as Mayor of the City and County of San Francisco for purposes of the Section 1983 claims, TAC ¶ 3, the suit against her functionally is a suit against the City and County of San Francisco. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). This means that plaintiffs must satisfy *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978), which held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."

Plaintiffs have not plausibly alleged any policy, custom, or practice on the part of the City and County of San Francisco that led to the constitutional violations asserted in the complaint. *See Saved Magazine v. Spokane Police Dept.*, 19 F.4th 1193, 1201 (9th Cir. 2021) ("The City of Spokane cannot be held liable because even assuming Spokane police officers violated Yaghtin's First Amendment rights, nothing in the complaint plausibly alleges a policy, custom, or practice leading to that violation.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs say their constitutional rights were violated on two occasions in 2021. *See*, *e.g.*, TAC ¶ 30. But "a policy or practice requires more than a few occurrences of challenged conduct. A single or even a few isolated and sporadic incidents of unconstitutional conduct are not enough to impose municipal liability under Section 1983." *Escobar-Lopez v. City of Daly City*, 527 F. Supp. 3d 1123, 1128 (N.D. Cal. 2021) (citing *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014)). Allegations of "no more than an 'isolated or sporadic incident[]' . . . cannot form the basis of *Monell* liability for an improper custom." *Saved Magazine*, 19 F.4th at 1201 (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

Plaintiffs' tentative effort to escape this conclusion on the basis of a "ratification" theory is of no moment. Plaintiffs say in their opposition brief that Breed "has final policy making authority over executive agencies such as the Port and Park and Rec," and "plaintiffs believe she has ratified the decisions regarding the permits at issue" and that she "was deliberately indifferent

3

to the constitutional violations resulting from those decisions." Dkt. No. 101 at 9-10. This is again vague and conclusory, and entirely outside of the complaint. The TAC does not present any plausible factual allegations in support of a ratification theory. It does not allege any facts indicating that Breed "adopted and expressly approved of the acts of others who caused the constitutional violation." *Trevino*, 99 F.3d at 920; *see also Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

### A. First Amendment -- Freedom of Expression

The shortfall under *Monell* is enough in itself to terminate all of the Section 1983 claims. For the sake of comprehensiveness, and to underscore the weakness of the TAC overall, the Court will identify the additional deficiencies in the individual claims.

The first claim says that Mayor Breed's alleged conduct "will have the effect of depriving plaintiffs of" their rights to freedom of expression under the First Amendment. TAC ¶ 37. But the TAC does not plausibly allege anything like a First Amendment violation. "In most cases where restrictions on speech are challenged pursuant to the First Amendment, we ask whether a legislative act, such as a city ordinance or permit scheme, unconstitutionally infringes on speech." *Saved Magazine*, 19 F.4th at 1199. The TAC does not identify a concrete and specific city ordinance or permit regime that might have caused a free speech violation. It does not adduce any facts that might plausibly state viewpoint discrimination of any sort. Nor does it identify a regulation of speech that is not sufficiently "narrowly tailored to serve [a] substantial and content-neutral governmental interest[]" or which fails to "leave[] open ample [alternative] channels of communication." *Ward v. Rock Against Racism*, 491 U.S. 781, 803 (1989).

### B. Fourteenth Amendment -- Equal Protection

The second Section 1983 claim alleges that "plaintiffs were and are all exercising a fundamental right, which defendants, and each of them discriminated against, by allowing others with less rights, including sporting events, to engage in outdoor activities without severe restrictions on artists and attendees." TAC ¶ 40. Mayor Breed's alleged conduct is again said to have infringed this right.

4

"To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (quotations and citation omitted). The allegations in the TAC do not identify any group that is "comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Id*. at 1167. Instead, plaintiffs' allegations impermissibly "conflat[e] all persons not injured into a preferred class receiving better treatment than the plaintiff." *Id*. (internal quotations and citation omitted). *See*, *e.g.*, TAC ¶ 40 (asserting that defendants allowed "others with less rights, including sporting events, to engage in outdoor activities" while plaintiffs' permits were denied); ¶ 28 (giving examples of City and County of San Francisco's ability to "work with dozens of other organizations to allow literally hundreds of other events to take place in San Francisco," all at other locations and in different contexts).

"Although a successful equal protection claim may be brought by a class of one, the plaintiff still bears the burden of proving that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Thornton*, 425 F.3d at 1167 (cleaned up). Among other deficiencies, plaintiffs have not alleged that any other group (arts or otherwise) was granted a permit to hold an outdoor event at Crane Cove Park or the Jerry Garcia Amphitheater during the same time period for which plaintiffs' permit applications were denied.

### C.  Fourteenth Amendment -- Due Process

The third Section 1983 claim alleges that Mayor Breed "denied plaintiffs due process by retaliating against plaintiffs in violation of their rights to due process." TAC ¶ 45. Plaintiffs also say, on information and belief, that Mayor Breed "took the actions with respect to the permit in retaliation for plaintiffs filing this action and past constitutionally protected actions by SFIAF and its Executive Director, Andrew Woods." *Id*. ¶ 44.

What these vague and conclusory allegations might mean is entirely unclear in the TAC. Plaintiffs again try to fill in the void in the opposition brief by saying that they are attempting to mount a procedural due process challenge here. Dkt. No. 101 at 9. "A procedural due process

claim hinges on proof of two elements: (1) a protectible liberty or property interest, and (2) a denial of adequate procedural protections." *Thornton*, 425 F.3d at 1164. Plaintiffs have not plausibly alleged facts supporting either element. Plaintiffs cite *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602 (1993), for the proposition that "[p]rocedural due process is not met when the decision maker is neither neutral nor detached." Dkt. No. 101 at 9. But that holding is not applicable here. *See Concrete Pipe*, 508 U.S. at 617-18 ("due process requires a neutral and detached *judge* in the first instance," and "the rigid requirements designed for officials performing judicial or quasi-judicial functions are not applicable to those acting in a prosecutorial or plaintiff-like capacity") (emphasis added and cleaned up).

In any event, the allegations of bias against Mayor Breed are wholly conclusory, and too vague and speculative to be plausible. *See* TAC ¶ 31 ("Plaintiffs are informed and believe and thereon allege that the Mayor has retaliated against Plaintiffs based on their failure to support her in the past, for challenging her public orders during the COVID pandemic, and for bringing this litigation against her. Plaintiffs are informed and believe and thereon allege that the current refusal of the CCSF to grant the permits at issue, like past mistreatment of SFIAF by the Mayor, is due, in whole or in part to the opposition of individuals associated with SFIAF, in particular Wood, to her past campaigns for electoral office.").

## CONCLUSION

The TAC is dismissed in its entirety. This was plaintiffs' fourth try at making out a plausible claim against defendants, and the remaining question is whether they are entitled to a fifth effort. "Although leave to amend a deficient complaint shall be freely given when justice so requires, leave may be denied if amendment of the complaint would be futile." *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citation omitted). "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (cleaned up).

6

Dismissal with prejudice is warranted at this stage. Plaintiffs have had many opportunities to state a plausible claim. They did not succeed, and nothing in their briefs or the record as a whole indicates that they would fare any better in another try. Plaintiffs certainly did not provide a good reason for further amendment, or say anything about what they might add in a fifth complaint. Dkt. No. 101 at 13; Dkt. No. 102 at 9. And as is widely recognized, the pandemic landscape has changed substantially for the better. Public events of every type -- sports, music, arts, political, and religious -- are resuming. The documents in defendants' requests for judicial notice, Dkt. Nos. 95 & 98-1, which plaintiffs have not opposed, show as much, and underscore how COVID-19 regulations for public gatherings have vastly changed since plaintiffs filed this case in October 2020.

The case is dismissed with prejudice, and judgment will be entered for defendants. Each side will bear its own fees and costs.

**IT IS SO ORDERED.**

Dated: March 4, 2022

JAMES DONATO
United States District Judge